UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHRIS PINKNEY,<br><br>                Plaintiff,<br><br>        v.<br><br>BROADWAY FINANCIAL CORPORATION, WAYNE-KENT A. BRADSHAW, ROBERT C. DAVIDSON, JR., DANIEL A. MEDINA, VIRGIL ROBERTS, DUTCH C. ROSS, III, ERIN SELLECK, and JACK T. THOMPSON,<br><br>                Defendants. | Case No.:<br><br>JURY TRIAL DEMANDED<br><br>**COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAWS** |

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**BACKGROUND**

1.      This action concerns a proposed transaction ("Proposed Transaction") announced on August 26, 2020 pursuant to which Broadway Financial Corporation. ("Broadway Financial" or the "Company") will merge with CFBanc Corporation ("CFBanc").

2.      On August 25, 2020, Broadway Financial's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger and reorganization (the "Merger Agreement").  Pursuant to the terms of the Merger Agreement, each share of CFBanc common stock will be converted into approximately 13.626 shares of Broadway Financial common stock (the "Merger Consideration").  Upon closing of the Proposed Transaction, stockholders of CFBanc will own approximately 47.5% of the outstanding common

1

stock of Broadway Financial, while stockholders of Broadway Financial are expected to own approximately 52.5 of Broadway Financial.

3. On January 19, 2021, in order to convince Broadway Financial shareholders to vote in favor of the Proposed Transaction, Defendants filed a materially incomplete and misleading preliminary S-4 Registration Statement (the "Registration Statement") with the United States Securities and Exchange Commission ("SEC").

4. The Registration Statement omits material information with respect to the Proposed Transaction, which renders the Registration Statement false and misleading. Accordingly, Plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Registration Statement.

5. In addition, a special meeting of Broadway Financial stockholders will be held to vote on the Proposed Transaction (the "Stockholder Vote"). It is therefore imperative that the material information that has been omitted from the Registration Statement is disclosed prior to the Stockholder Vote so Broadway Financial stockholders can properly exercise their corporate voting rights and make an informed decision on whether to vote in favor of the merger.

## JURISDICTION & VENUE

6. This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act and 28 U.S.C. §1331 because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

7. This Court has jurisdiction over Defendants because each defendant is either a corporation that conducts business in this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because, among other things: (a) the conduct at issue will have an effect in this District; (b) a substantial portion of the transactions and wrongs complained of herein, occurred in this District; and (c) certain Defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District. Additionally, the Company's common stock trades on the NASDAQ, which is headquartered in this District.

## THE PARTIES

9. Plaintiff is, and has been continuously throughout all times relevant hereto, a Broadway Financial shareholder.

10. Defendant Broadway Financial is a Delaware corporation and a party to the Merger Agreement. Broadway Financial shares are traded on the NASDAQ under the ticker symbol "BYFC."

11. Defendant is Wayne-Kent A. Bradshaw is President, Chief Executive Officer and a director of the Company.

12. Defendant Robert C. Davidson, Jr., is a director of the Company.

13. Defendant Daniel A. Medina is a director of the Company

14. Defendant Virgil Robert is Chairman of the Board and a director of the Company.

15. Defendant Dutch C. Ross III is a director of the Company.

16. Defendant Erin Selleck is a director of the Company.

17. Defendant Jack T. Thompson is a director of the Company.

## FACTS

18. Broadway Financial was incorporated under Delaware law in 1995 for the purpose of acquiring and holding all of the outstanding capital stock of Broadway Federal Savings and Loan Association (the "Bank") as part of the Bank's conversion from a federally chartered mutual savings association to a federally chartered stock savings bank. In connection with the conversion, the Bank's name was changed to Broadway Federal Bank, f.s.b. The Bank's business consists of deposits from the general public and using such deposits, together with borrowings and other funds, to make mortgage loans secured by residential properties.

19. CFBanc is a bank holding company and a benefit corporation organized under the laws of and headquartered in Washington, D.C. CFBanc works to promote economic equity and opportunity by providing increased access to responsible capital and complementary financial services to underserved communities to ensure the long-term well-being and resilience of individual, families and institutions. CFBanc conducts its business operations through its wholly-owned national bank subsidiary, City First Bank of D.C., National Association and through other subsidiaries and affiliates.

20. On August 25, 2020, Broadway Financial's Board caused the Company to enter into the Merger Agreement.

21. At the Effective Time (as defined in the Merger Agreement), and as a result of the Merger:

> (a) Subject to Section 2.2(e), (i) each share of the Class A Common Stock, par value $0.50 per share, of CFB issued and outstanding immediately prior to the Effective Time (the "CFB Class A Common Stock"), except for shares of CFB Class A Common Stock owned by CFB or BYFC (in each case other than shares of CFB Class A Common Stock (A) held in trust accounts, managed accounts, mutual funds and the like, or otherwise held in a fiduciary or agency capacity that are beneficially owned by third parties or held in CFB Benefit Plans or (B) held, directly or

indirectly, by CFB or BYFC in respect of debts previously contracted) and Dissenting Shares, shall be converted into 13.626 shares (the ratio of 1:13.626, the "<u>Exchange Ratio,</u>" and such shares, the "<u>Class A Merger Consideration</u>") of the voting common stock, par value $0.01 per share, of BYFC (the "<u>BYFC Voting Common Stock</u>")

22. The Merger Consideration is unfair because, among other things, the intrinsic value of the Company is in excess of the amount the Company's stockholders will receive in connection with the Proposed Transaction.

23. It is therefore imperative that the Company shareholders receive the material information that Defendants have omitted from the Registration Statement so that they can meaningfully assess whether the Proposed Transaction is in their best interests prior to the vote.

24. Section 6.12 of the Merger Agreement has a no solicitation clause that prevents Broadway Financial from soliciting alternative proposals and constraints its ability to negotiate with potential buyers:

> Section 6.12    <u>Acquisition Proposal</u>.
>
> (a)    Each Party agrees that it shall not, and shall not authorize or permit any of its officers, directors, employees, investment bankers, attorneys or accountants retained by it to, directly or indirectly: (i) solicit, initiate, encourage, induce or knowingly facilitate the communication, making, submission or announcement of any Acquisition Proposal or Acquisition Inquiry or take any action that could reasonably be expected to lead to an Acquisition Proposal or Acquisition Inquiry; (ii) furnish any information regarding such Party to any Person in connection with or in response to an Acquisition Proposal or Acquisition Inquiry; (iii) engage in or participate in discussions or negotiations with any Person with respect to any Acquisition Proposal or Acquisition Inquiry; (iv) otherwise knowingly facilitate any effort or attempt to make an Acquisition Proposal or Acquisition Inquiry; (v) approve, endorse or recommend any Acquisition Proposal (subject to and except as expressly permitted by Section 5.2 and Section 5.3); or (vi) execute or enter into any letter of intent or similar document or any Contract contemplating or otherwise relating to any Acquisition Transaction; provided, however, that, notwithstanding anything contained in this Section 4.5(a), prior to obtaining the Company Shareholder Approval or the CGI Stockholder Approval, as applicable, each Party may furnish nonpublic information regarding such Party to, and enter into discussions or negotiations with, any Person in response to a bona fide written Acquisition Proposal, which such Party's Board of Directors determines in good

faith, after consultation with a nationally recognized independent financial advisor and written advice from its outside legal counsel, constitutes, or is reasonably likely to result in, a Superior Offer (and is not withdrawn) if: (A) neither such Party nor any Representative of such Party shall have materially breached this Section 4.5; (B) the Board of Directors of such Party concludes in good faith, based on the advice of outside legal counsel, that the failure to take such action would be reasonably likely to be inconsistent with the fiduciary duties of the Board of Directors of such Party under applicable Legal Requirements; and (C) such Party receives from such Person an executed confidentiality agreement containing provisions (including nondisclosure provisions, use restrictions, non-solicitation provisions, no hire provisions and "standstill" provisions) at least as favorable to such Party as those contained in the Confidentiality Agreement. Without limiting the generality of the foregoing, each Party acknowledges and agrees that, in the event any Representative of such Party (whether or not such Representative is purporting to act on behalf of such Party) takes any action that, if taken by such Party, would constitute a material breach of this Section 4.5 by such Party, the taking of such action by such Representative shall be deemed to constitute a breach of this Section 4.5 by such Party for purposes of this Agreement. Notwithstanding anything to the contrary in this Agreement, each Party or any of its officers, directors, employees, investment bankers, attorneys or accountants retained by it may (x) in response to any unsolicited Acquisition Proposal or Acquisition Inquiry, seek to clarify the terms and conditions of such Acquisition Proposal or Acquisition Inquiry and (y) in response to any unsolicited Acquisition Proposal or Acquisition Inquiry from a third party, inform such third party or its representative of the restrictions imposed by this Section 4.5 (without conveying, requesting, or attempting to gather any other information except as otherwise specifically permitted).

25. In addition, Section 8.2 of the Merger Agreement requires Broadway Financial to pay up to a $1,7500,000 "termination fee" in the event this agreement is terminated by Broadway Financial and improperly constrains the Company from obtaining a superior offer. Such a termination fee is excessive and unduly restrictive to Broadway Financial's ability to consider other offers.

26. Defendants filed the Registration Statement with the SEC in connection with the Proposed Transaction.

27. As alleged herein, the Registration Statement omits material information with respect to the Proposed Transaction, which renders the Registration Statement false and

misleading.

28. First, the Registration Statement omits material information regarding Broadway Financial's and CFBanc's financial projections.

29. With respect to Broadway Financial's financial projections, the Registration Statement fails to disclose all line items used to calculate Net income, Earnings per share, and Total assets.

30. With respect to CFBanc's financial projections, the Registration Statement fails to disclose all line items used to calculate Net income, Earnings per share, and Total assets.

31. The disclosure of projected financial information is material information necessary for stockholders to gain an understanding of the basis for any projections as to the future financial performance of the combined company. In addition, this information is material and necessary for stockholders to understand the financial analyses performed by the companies' financial advisors rendered in support of any fairness opinion.

32. Second, the Registration Statement omits material information regarding the analyses performed by the Company's financial advisor Keefe, Bruyette & Woods, Inc. ("KBW") and CFBanc's financial advisor Raymond James & Associates, Inc. ("Raymond James") in connection with the Proposed Transaction.

33. With respect to KBW's *Selected Companies Analysis*, the Registration Statement fails to disclose the individual multiples and metrics for the companies observed in the analysis. This information must be disclosed to make the Registration Statement not materially misleading to Broadway Financial stockholders and provide stockholders with full and relevant information in considering how to vote.

34. With respect to KBW's *Broadway Discounted Cash Flow Analysis*, the Registration Statement fails to disclose: (i) the individual inputs and assumptions underlying the discount rates of 13.0% to 17.0%, (ii) the present value of the estimated excess cash flows that Broadway Financial could generate over the 5.5-year period from the end of the second quarter of 2020 through 2025, (iii) the present value of the Company's implied terminal value, and (iv) KWB's basis to assume that the Company would maintain a tangible common equity to tangible assets ratio of 8.00% and to apply a range of 10.0x to 14.0x Broadway Financial's estimated 2026 earnings to calculate terminal value. This information must be disclosed to make the Registration Statement not materially misleading to Broadway Financial stockholders and provide stockholders with full and relevant information in considering how to vote.

35. With respect to KBW's *CFBanc Discounted Cash Flow Analysis*, the Registration Statement fails to disclose: (i) the individual inputs and assumptions underlying the discount rates of 13.0% to 17.0%, (ii) the present value of the estimated excess cash flows that CFBanc could generate over the 5.5-year period from the end of the second quarter of 2020 through 2025, (iii) the present value of the CFBanc's implied terminal value, and (iv) KWB's basis to assume that the CFBanc would maintain a tangible common equity to tangible assets ratio of 8.00% and to apply a range of 10.0x to 14.0x CFBanc's estimated 2026 earnings to calculate terminal value. This information must be disclosed to make the Registration Statement not materially misleading to Broadway Financial stockholders and provide stockholders with full and relevant information in considering how to vote.

36. With respect to Raymond James' *Discounted Cash Flow Analysis*, the Registration Statement fails to disclose: (i) Raymond James' basis to for applying multiples ranging from 11.0x to 13.0x, (ii) estimated terminal values for CFBanc and Broadway Financial,

and (iii) the individual inputs and assumptions underlying the discount rates of 15.00% to 17.00%. This information must be disclosed to make the Registration Statement not materially misleading to Broadway Financial stockholders and provide stockholders with full and relevant information in considering how to vote.

37. With respect to Raymond James' *Selected Companies Analysis*, the Registration Statement fails to disclose the individual multiples and metrics for the companies observed in the analysis. This information must be disclosed to make the Registration Statement not materially misleading to Broadway Financial stockholders and provide stockholders with full and relevant information in considering how to vote.

38. With respect to Raymond James' *Pro Forma Discounted Cash Flow Analysis*, the Registration Statement fails to disclose: (i) the individual inputs and assumptions underlying the discount rates of 15.00% to 17.00%, (ii) Raymond James' basis to assume that the pro forma combined entity would maintain a tangible common equity to tangible assets ratio of 8.00% and to apply a range of 11.0x to 13.0x to the pro forma combined entity's estimated 2025 earnings to calculate terminal value. This information must be disclosed to make the Registration Statement not materially misleading to Broadway Financial stockholders and provide stockholders with full and relevant information in considering how to vote.

39. Third, the Registration Statement fails to disclose sufficient information regarding communications about post-transaction employment and directorships during the negotiation of the Proposed Transaction.

40. Fourth, the Registration Statement fails to disclose sufficient information regarding the existence of and/or number and nature of all confidentiality agreements entered into between the Company and any interested third party during the sales process, if their terms differed

9

from one another, and if they contained "don't-ask, don't-waive" or standstill provisions, and if so, the specific conditions, if any, under which such provisions would fall away or prevent parties from submitting a bid.

41. The omission of the above-referenced material information renders the Registration false and misleading.

42. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's stockholders.

## CLAIMS FOR RELIEF

### COUNT I

**(AGAINST ALL DEFENDANTS FOR VIOLATIONS OF SECTION 14(a) OF THE EXCHANGE ACT AND RULE 14a-9 PROMULGATED THEREUNDER)**

43. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

44. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, requires that Registration communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

45. Defendants issued the Registration Statement with the intention of soliciting stockholder support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Registration Statement and the use of their name in the Registration Statement, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Company and relied upon by the Board in

recommending the Company's stockholders vote in favor of the Proposed Transaction.

46. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. By virtue of their roles as officers and/or directors, each of the Individual Defendants were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Registration Statement, but nonetheless failed to obtain and disclose such information to stockholders as required.

47. The preparation of a Registration Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in preparing and reviewing the Registration Statement. Defendants were also negligent in choosing to omit material information from the Registration Statement or failing to notice the material omissions in the Registration Statement upon reviewing it, which they were required to do carefully.

48. The misrepresentations and omissions in the Registration Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law.

## COUNT II

### (AGAINST THE INDIVIDUAL DEFENDANTS FOR VIOLATIONS OF SECTION 20(a) OF THE EXCHANGE ACT)

49. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

50. The Individual Defendants acted as controlling persons of the Company within

the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of the Company, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

51. Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

52. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Registration Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Registration Statement.

53. In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants

participated in drafting and/or gave their input on the content of those descriptions.

54. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

55. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

56. Plaintiff has no adequate remedy at law.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to disseminate a Registration Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all issues so triable.

Dated: February 3, 2021

                                             **MOORE KUEHN, PLLC**

                                             */s/Justin Kuehn*
                                             Justin A. Kuehn
                                             Fletcher W. Moore
                                             30 Wall Street, 8th floor
                                             New York, New York 10005
                                             Tel: (212) 709-8245
                                             jkuehn@moorekuehn.com
                                             fmoore@moorekuehn.com

                                             *Attorneys for Plaintiff*